UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROTHSCHILD DIGITAL CONFIRMATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SKEDULO HOLDINGS INC., <br><br> Defendant. | Case No. 3:19-cv-02659-JD <br><br> **ORDER RE MOTION TO DISMISS** <br> Re: Dkt. No. 11 |

Plaintiff Rothschild Digital Confirmation, LLC ("Rothschild") alleges that defendant Skedulo Holdings Inc.'s ("Skedulo") products violate U.S. Patent No. 7,456,872 (the "'872 patent"), "Device and Method for Embedding and Retrieving Information in Digital Images." Dkt. No. 1. Skedulo moves to dismiss Rothschild's complaint under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). Dkt. No. 11.

The Court found the motion suitable for decision without oral argument pursuant to Civil L.R. 7-1(b). Dkt. No. 43. The complaint is dismissed, and Rothschild may file an amended complaint by April 20, 2020.

**BACKGROUND**

The relevant background for a motion to dismiss on *Alice* grounds is generally limited to the patent itself. *See Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1123-24 (Fed. Cir. 2018). While the initial complaint asserted claims 1 and 27 of the '827 patent, Rothschild acknowledges that claim 27 has been cancelled and is not at issue in this case. Dkt. No. 37 at 3 n.2. Accordingly, only claim 1, the remaining, asserted claim, will be considered. Claim 1 recites:

  1. A locational image verification device for verifying an assignment of a user comprising:

> a user verification module for verifying an identity of a user of the device, wherein upon verification, the user verification module enables operation of the device and provides an assignment to the user;
>
> a capture module for capturing an image relating to the assignment and creating a digital image file, wherein the user verification module verifies the identity of the user of the device at a time of the image capture;
>
> a locational information module for determining a location of the device when capturing the image;
>
> a date and time module for determining a date and time of the image capture;
>
> a processing module for associating the assignment, the user identity, location information and the time and date to the digital image file; and
>
> an encryption module for encrypting the digital image file and associated information upon image capture.

Dkt. No. 1-1 at 16:56-17:7.

## DISCUSSION

### I. LEGAL STANDARDS

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This calls for enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility analysis is "context-specific" and not only invites, but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion. In many cases, too, evaluation can proceed even before a formal claim construction." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016) (citations omitted); *see also Aatrix*, 882

F.3d at 1125. But as the circuit has recently emphasized, the question of eligibility may be determined at the pleadings stage "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix*, 882 F.3d at 1125; *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1320 (Fed. Cir. 2019) (vacating Rule 12(b)(6) and Rule 12(c) dismissals where complaint made plausible and "well-pleaded allegations" of eligibility). This is particularly true for the element of an inventive concept in the *Alice* analysis, which raises a question of fact that can be resolved in a motion to dismiss only if the answer may be found in the complaint, the patent, and matters subject to judicial notice. *Aatrix*, 882 F.3d at 1128.

Even so, a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized factual allegations. The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In a patent case, "a court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and patent specification." *Secured Mail Sols., LLC v. Universal Wilde*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotation and citation omitted). Not every "allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss." *Cellspin*, 927 F.3d at 1317. To the extent claim construction issues might arise, the Court should adopt the patentee's proposed constructions. *Aatrix*, 882 F.3d at 1125.

Rothschild says there are "substantial factual disputes" that preclude dismissal, Dkt. No. 37 at 15, but the issues it points to do not foreclose a determination of the Section 101 question at this stage of the case. For example, "whether Defendant's attempt to 'reduced down' [*sic*] the claims to 'claimed ideas' is a proper interpretation of the claims," *id.*, is not a question of fact. "Rather, the 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). And while two other issues Rothschild mentions -- "who is the skilled artisan" and "whether the skilled artisan would consider the claims well-understood, routine, and conventional" -- relate to the question of inventive concept, there is

3

nothing in the patent, the complaint, or Rothschild's own briefing that addresses the latter question other than conclusory statements like "[t]he combination of a user verification module, capture module, locational information module, date and time module, processing module and encryption module in claim 1 represent an inventive concept that was not well-understood, routine, or conventional at the time of filing of the '872 patent." Dkt. No. 37 at 13. This is not enough to create a factual dispute under the prevailing standards. The "dispute" about the identity of the skilled artisan is not raised until the final lines of the opposition brief, without any suggestion as to what the dispute is or how it is relevant to Skedulo's motion.

The parties have not contested the proper construction of any terms in claim 1, so it is unnecessary to engage in claim construction before addressing validity under Section 101 and *Alice*. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019); *TriDim Innovations LLC v. Amazon.com, Inc.*, 207 F. Supp. 3d 1073, 1078 (N.D. Cal. 2016).

Consequently, the Section 101 inquiry may properly be made at this stage of the case. *Alice* established a two-part test for the Section 101 inquiry. First, the Court "determine[s] whether the claims at issue are directed to a patent-ineligible concept" such as an abstract idea, law of nature or natural phenomenon. *Alice*, 573 U.S. at 218. It is often "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" for purposes of the step 1 analysis. *Enfish*, 822 F.3d at 1334; *see also Alice*, 573 U.S. at 221.

The "purely functional nature of the claim confirms [whether it] is directed to an abstract idea, not to a concrete embodiment of that idea." *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). "For an application of an abstract idea to satisfy step one, the claim's focus must be something other than the abstract idea itself." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018). But oversimplifying claims must be avoided because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice*, 573 U.S. at 217 (second alteration in original) (internal citation omitted).

If a patent is directed to a patent-ineligible concept, the second step in *Alice* is to look for an "'inventive concept' -- *i.e.*, an element or combination of elements that is sufficient to ensure

4

1  that the patent in practice amount to significantly more than a patent upon the [ineligible concept]
2  itself." *Id.* at 217-18 (alteration in original) (internal quotation and citation omitted). This step
3  asks, "[w]hat else is there in the claims before us?" *Mayo Collaborative Servs. v. Prometheus*
4  *Labs.,* 566 U.S. 66, 78 (2012). As in step 1, the answer must include something "significantly
5  more" than the abstract idea itself. *BSG Tech*, 899 F.3d at 1290. "It is well-settled that mere
6  recitation of concrete, tangible components is insufficient to confer patent eligibility to an
7  otherwise abstract idea. Rather, the components must involve more than performance of 'well-
8  understood, routine, conventional activit[ies] previously known to the industry.'" *In re TLI*
9  *Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (alteration in original) (quoting
10 *Alice*, 573 U.S. at 225). "If a claim's only 'inventive concept' is the application of an abstract idea
11 using conventional and well-understood techniques, the claim has not been transformed into a
12 patent-eligible application of an abstract idea." *BSG Tech*, 899 F.3d at 1290-91.

## II. THE CLAIMED INVENTION IS NOT PATENTABLE

### A. Claim 1 Is Directed to an Abstract Idea

Step 1 of the *Alice* test -- determining whether a claim is directed to a patent-ineligible concept -- can be complicated in some cases. That is particularly true when the relevant inquiry "ask[s] whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea." *Enfish*, 822 F.3d at 1335.

Rothschild says that this is one of those complicated cases, but the complaint and patent in suit show otherwise. Considering the claims "in light of the specification," as is required at this step, claim 1, the sole remaining, asserted claim, is clearly directed to the abstract idea of associating traditional information like date, location, and photographer with a picture and securing the image. *Id*.

The patent's specification shows the claims are directed to this abstract idea, and gainsays a focus on computer technology. It notes, "In the prior art, when one desires to catalog . . . images in a particular order, they [*sic*] usually are left to placing these images manually into photograph albums." Dkt. No. 1-1 at 1:34-38. The Court has previously recognized patents that analogize themselves to "an organizational system people intuitively use in a variety of contexts," like

5

bookshelves and desks, or in this case, photograph albums, are directed to an abstract idea. *TriDim Innovations*, 207 F. Supp. 3d at 1079. In determining whether a patent claims an abstract idea, courts often look for "fundamental . . . practice[s] long prevalent." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (second alteration in original) (quoting *Alice*, 573 U.S. at 219). In this case, the Court need not look far for that practice -- it is expressly stated in the specification. Popular culture and private life are replete with albums organized by date, location, and subject, with handwritten notes scribbled on the back of the photograph recording the same information as described in the patent. It is not a stretch to say these practices have been routine in family, business and academic life since cameras became widely available decades ago.

The Federal Circuit's decision in *In re TLI Communications Patent Litigation*, which invalidated claims relating to "an apparatus for recording of a digital image, communicating the digital image from the recording device to a storage device, and to administering the digital image in the storage device" compels the same result here. *In re TLI Commc'ns Patent Litig.*, 823 F.3d at 609. At step 1, the court found the claims were "directed to the abstract idea of classifying and storing digital images in an organized manner." *Id.* at 611. It is often "sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334. Claim 1 of the '872 patent is indistinguishable from the patent in *In re TLI* and "[o]n its face, . . . is drawn to the concept of classifying an image and storing the image based on its classification." *In re TLI Commc'ns Patent Litig.*, 823 F.3d at 611.

The elements of claim 1 are unspecified "user verification," "capture," locational information," "date and time," "processing" and "encryption module[s]," Dkt. No. 1-1 at 16:56-17:7, that "merely provide a generic environment in which to carry out the abstract idea of classifying and storing digital images in an organized manner." *In re TLI Commc'ns Patent Litig.*, 823 F.3d at 611. The "claim language" is of an "essentially result-focused, functional character." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 939 F.3d 1355, 1365 (Fed. Cir. 2019) (citation omitted). The "user verification module," "verf[ies] an identity of a user of the device," the "capture module" is "for capturing an image," and so on. Dkt. No. 1-1 at 16:56-17:7. The

specification does nothing to disturb this conclusion since it emphasizes the invention relates "to devices, systems and methods for embedding and retrieving information in digital images and using the information to organize, process and control the digital images." Dkt. No. 1-1 at 1:23-26.

Rothschild strains to distinguish *In re TLI*, but without success. The complaint's conclusory allegation that the "'872 patent represents a technical solution to a problem associated with digital image capture" because "the invention increased the ease of use and efficiency of organizing images and associating vital information with a collection of images," Dkt. No. 1 ¶ 24, is contradicted by the patent itself. The specification "describes hardware devices, systems and methods that will facilitate embedding information into digital images of any type (e.g., jpeg, bmp, tiff, etc.) to organize, control and manipulate these images both while in digital form, and later when in printed form." Dkt. No. 1-1 at 2:18-23. This description demonstrates that the claims are not directed to improvements in computer functionality as required by cases like *Enfish*, but rather focus on associating information with images and organizing them, regardless of their digital or physical nature. The Court "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, such as the claims and patent specification," *Secured Mail Sols.*, 873 F.3d at 913, and will not do so here.

The Federal Circuit's decision in *Ancora Technologies, Inc. v. HTC America, Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) does not require a contrary result, as plaintiff suggests. In that case, the court reversed dismissal on *Alice* grounds of a patent that placed software programming licensing verification in an unconventional location -- the part of the memory "typically used for storing programs that assist in the start-up of a computer, not verification structures comparable to the software-licensing structure embodied by the claimed invention." *Id.* at 1345. An advantage of this location was that it is harder to hack -- "*i.e.*, alter[] it without rendering the computer inoperable." *Id*. This improved security represented "a non-abstract computer-functionality improvement" because it was directed to "a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.* at 1348. The '872 patent is distinguishable because of

1  its complete lack of specificity and the fact it is not directed to solve a specific computer problem,
2  but rather the timeless struggle to organize photographs.

### B. Claim 1 Lacks an Inventive Concept

Claim 1 lacks an "'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent eligible invention." *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72-73). The presence of an inventive concept ensures a patent contains "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* at 217-18 (quoting *Mayo*, 566 U.S. at 72-73). The "inventive concept must be evident in the claims" themselves. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

"It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more than that ineligible concept," but that is precisely what Rothschild seeks to do here. *BSG Tech*, 899 F.3d at 1291. The complaint alleges that "the invention increased the ease of use and efficiency of organizing images and associating vital information with a collection of images." Dkt. No. 1 ¶ 24. From this, the complaint asserts that "[a]s such, the invention disclosed and claimed in the '872 patent represents a technical solution to a problem associated with digital image capture." *Id.* While "concrete allegations regarding the claimed combination's improvement to the functioning of the computer," may suffice at *Alice*'s second step, since the allegation is simply another formulation of the abstract idea to which the Court found the '872 patent was directed to in step 1, this analysis is prima facie insufficient to allege an inventive concept. *Aartix*, 882 F.3d at 1128.

Once the abstract idea is removed, there are no allegations in the complaint or patent as to claim 1's inventive concept or that the combination of claim limitations was not well-understood, routine, or conventional. In opposing the motion to dismiss, which of course is not a proper original source for allegations on a motion to dismiss, *see id.*, Rothschild offers only conclusory assertions like "devices at the time of the invention did not comprise the modules and did not perform the steps outlined in the claims." Dkt. No. 37 at 14. This will not do to avoid dismissal.

8

Plaintiff does not dispute that "the elements in the claimed product (apart from the [abstract idea itself]) involve well-understood, routine, conventional activity previously engaged in by researchers in the field," so that issue need not be addressed. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019) (citation omitted). Even if plaintiff were to contest this conclusion, nowhere do the claims or specification appear to require anything but "standard," "conventional," or "known" components, Dkt. No. 1-1 at 6:5-9; 6:32-34; 7:64-8:1, except for when it allows that a module may consist of "any other [model of component] that exists currently or will exist in the future," *id.* at 4:33-34.

## CONCLUSION

Because claim 1 of the '872 patent is directed to an abstract idea and does not add an inventive concept, the complaint is dismissed. In light of the plain language of the claims in the patent, the Court has doubts that Rothschild can amend around this problem. Plaintiff is reminded that "a patentee cannot avoid dismissal for ineligible claims purely on the basis of conclusory or generalized statements, and fanciful or exaggerated allegations that later prove to be unsupported may lead to fee shifting or other sanctions." *Yu v. Apple Inc*., 392 F. Supp. 3d 1096, 1102 (N.D Cal. 2019) (citations omitted).

Since the Court cannot say that any amendment would necessarily be futile and leave to amend "when justice so requires" is to be granted with "extreme liberality," Rothschild may file an amended complaint by April 20, 2020. *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (citations omitted). If this deadline is not feasible in light of the public health situation, the parties may agree on a new date by joint stipulation. If the parties cannot agree, a party may ask the Court to extend the deadline. Failure to respond to this order by April 20, 2020, will result in dismissal with prejudice under Rule 41(b).

**IT IS SO ORDERED.**

Dated: March 19, 2020

JAMES DONATO
United States District Judge